IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD RILEY,<br>　　　　　*Plaintiff,* | § <br> § <br> § <br> § | |
| -vs- | § <br> § | SA-20-CV-00481-XR |
| SAFECO INSURANCE COMPANY OF<br>INDIANA,<br>　　　　　*Defendant.* | § <br> § <br> § <br> § <br> § | |

**ORDER**

One this date, the Court considered Defendant's motion for summary judgment (ECF No. 21), Plaintiff's amended response (ECF No. 30), and Defendant's amended reply (ECF No. 34). After careful consideration, Defendant's motion is **GRANTED**.

**BACKGROUND**[1]

This case arises out of a dispute between Plaintiff Richard Riley and Defendant Safeco Insurance Company of Indiana ("Safeco") regarding a claim for damage to Riley's residence, which he contends was caused by a hail storm in San Antonio, Texas on or about April 12, 2019.

Riley's wife first reported hail damage to the metal roof of the residence on April 16, 2019. ECF No. 21-6, at 4. Safeco scheduled an inspection to determine the cause and extent of damage. *Id.* at 3–4. Doug Lehr, Safeco's adjuster, inspected the property on April 20, 2019. ECF No. 21-6, at 4. Lehr's investigation included an assessment of the exterior elevations and roof. *Id.* at 3. Lehr observed hail indentations to the metal roof. *Id.* To assist him in evaluating the nature of the roof damage, Lehr retained an engineering firm, Rimkus Consulting, to determine whether the damage to the metal roof was cosmetic or structural. *Id.*; ECF No. 21-13, at 2. Erik Valle, an engineer with Rimkus Consulting, inspected the property on April 29, 2019, and determined that the hail dents

---

[1] These facts are undisputed unless otherwise noted.

to the metal roof were cosmetic rather than structural. ECF No. 21-5, at 1–2. Valle reported that

he saw no cracks, chips, punctures, or penetrations to the metal roof panels. *Id.* at 7–8. Valle also

inspected the attic space and observed no water stains to the attic framing, confirming that there

were no roof leaks or openings in the roof. *Id.* at 8. Valle concluded that the hail impacts did not

diminish the functionality or service life of the metal roof, and ultimately concluded the damage

was cosmetic only. *Id.* at 9. Based on this conclusion, Safeco denied coverage to the metal roof

because Riley's policy excluded from coverage cosmetic damage. ECF No. 21-3, at 2.

Riley hired public adjuster Kyle Herring of Aftermath Consulting Group, LLC, on

September 29, 2019, and Herring prepared an estimate for a complete roof replacement totaling

$135,322.96. ECF No. 21-14, at 6–8. Herring disagreed with Rimkus Consulting and concluded

the hail impact to the metal roof went beyond altering the roof's physical appearance. *Id.* at 7–8.

Thus, Herring asserted that the hail damage was covered. *Id.* at 7–8.

Due to this new information, Lehr re-inspected Riley's property with Herring and revised

his estimate to include additional items unrelated to the roof. ECF No. 21-6, at 2. Since Herring

did not provide additional information as to the metal roof, Safeco stood on its previous denial. *Id.*

However, after applying deductible and depreciation, Safeco issued payment in the amount of

$10,766 for the covered damages to the exterior elevations. *Id.* at 5–6.

Riley brought this lawsuit in state court, alleging that Safeco breached the insurance

contract and various extra-contractual duties in the payment and handling of his claim. *See* ECF

No. 1-1 at 5–15. Safeco removed this case to this Court on April 17, 2020 on the basis of diversity

jurisdiction. ECF No. 1.

Safeco now moves for summary judgment as to Riley's extra-contractual claims.[2] Safeco asserts that, because it reasonably denied coverage and Riley fails to produce evidence that he suffered any damages as a result of any bad faith conduct, it is entitled to summary judgment. Riley asserts that Safeco's reliance on the Rimkus report creates a genuine dispute of material fact because Safeco did not conduct a reasonable investigation and both Lehr and Valle failed to properly apply the cosmetic damage exclusion articulated in the insurance policy.

**DISCUSSION**

**I.      Summary Judgment Standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

---

[2] Safeco moved for summary judgment as to DTPA and misrepresentation claims; however, Riley did not plead either of these claims.

(5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Analysis

Riley brings statutory extra-contractual claims for various alleged violations of the Texas Insurance Code. Riley's claims are twofold: First, that Safeco failed to properly investigate Riley's claim in violation Texas Insurance Code section 541.060(a)(7). Second, Riley asserts that Safeco denied payment of his claim when Safeco's liability under the insurance policy was reasonably

clear in violation of the Unfair Claim Settlement Practices Act, Texas Prompt Payment Act (TPPA), and Texas Insurance Code section 541.060(a)(2)(A). Riley's Chapter 541 extra-contractual bad faith claims fail as a matter of law because Riley has not provided evidence that Safeco failed to conduct a proper investigation and only points to evidence of a bona fide dispute about Safeco's liability.[3] Additionally, Riley's claim for relief under section 542.003 of the Texas Insurance Code must be dismissed because it does not authorize a private cause of action. However, the Court does not grant summary judgment as to Riley's TPPA claim.

### A. Riley's extra-contractual claims based on unreasonable investigation fail as a matter of law because there is no evidence that Safeco acted unreasonably in investigating his claim.

Riley alleges that Safeco improperly investigated his insurance claim. An insurer is obligated to adequately investigate a claim before denying it. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997). "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44–45 (Tex. 1998). "An insurer does not act in bad faith where a reasonable investigation reveals the claim is questionable." *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.). If an insurer fails to conduct a reasonable investigation, it cannot assert that a bona fide coverage dispute exists. *Simmons*, 963 S.W.2d at 44. An insurer fails to reasonably investigate a claim if the investigation is conducted as a pretext for denying the claim. *See, e.g.*, *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 458 (Tex. 1997) (finding that where there is evidence that an expert's report was not objectively prepared, summary judgement is not appropriate); *Simmons*, 963 S.W.2d at 45 (finding an

---

[3] Riley also objects to the admissibility of Safeco's experts' definition of "cosmetic damage" insofar as it conflicts with the insurance policy at issue. The Court does not rely on this evidence in reaching its conclusion; thus, these objections are moot.

"outcome-oriented" investigation unreasonable). An insurer's reliance on an expert's report will not support a finding of bad faith unless "there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Nicolau*, 951 S.W.2d at 448.

First, Riley contends that "reasonableness is ordinarily an issue of fact," and therefore his extra-contractual claims are not subject to summary judgment. ECF No. 30, at 4. However, a Court may still decide a bad faith claim as a matter of law if there is no conflict in evidence. *Giles*, 950 S.W.2d at 56 ("A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question."); *see also Alvarez v. State Farm Lloyds*, No. SA-18-CV-01191-XR, 2020 WL 1033657, at *4 n.2 (W.D. Tex. March 2, 2020) (collecting cases). Texas courts regularly determine on summary judgment whether a fact dispute exists as to the insurer's denial of coverage. *See Alvarez*, 2020 WL 1033657, at *4 n.2. Thus, Riley's argument that his extra-contractual claims are not within the ambit of summary judgment is unavailing.

Riley next asserts that Safeco conducted an unreasonable investigation because Safeco "outsourced" its coverage decision to an expert that did not apply the proper definition of "cosmetic damage" in its investigation. ECF No. 30, at 11. Specifically, Riley contends that because Valle did not apply the proper definition of "cosmetic" and failed to conduct metallurgical testing, Safeco could not reasonably rely on his report.

Riley has not provided evidence that Valle's report was not objectively prepared or that Safeco's reliance on the report was unreasonable. The undisputed evidence in the record shows that soon after Riley reported the hail damage to his roof, Safeco took reasonable steps to investigate Riley's claim. ECF No. 21-6, at 3–4. Lehr retained a professional engineer, Valle, because he was unable to determine whether the damage was cosmetic or non-cosmetic after his

visual inspection. *Id.* Valle inspected the roof and took photographs, which he enlarged one hundred times to further look for covered damage. Valle Dep. 18:1–19:8. Valle concluded that the hail did not diminish the functionality of the metal roof or its service life. ECF No. 21-5, at 9. Riley then engaged a public adjuster, Kyle Herring, who prepared an estimate to replace the metal roof. ECF No. 21-14, at 148. In response, Lehr re-inspected Riley's property with Herring. ECF No. 21-6, at 1. However, Herring did not provide additional information at that time to dispute Safeco's earlier determination that the roof damage was cosmetic. *Id.*; ECF No. 21-14, at 2. Thus, Safeco stood on its earlier denial. ECF No. 21-6, at 1.

Riley particularly takes issue with how the term "cosmetic damage" was defined by Lehr, Valle, and Safeco during the investigation. Riley contends that the alleged misapplication of the term prevented Safeco from conducting a reasonable investigation. However, an insurer does not act in bad faith if they are incorrect as to the proper construction of the policy. *Moriel*, 879 S.W.2d at 18. Where the dispute concerns "the factual basis for the claim, the proper legal interpretation of the policy, or both," such claims are subject to a breach of contract analysis rather than bad faith. *Id.*; *see also Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 474 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 568 (Tex. App.—San Antonio 2011, pet. denied). Safeco investigated the claim, and while there is a dispute over whether Safeco properly denied coverage, Safeco may deny coverage based on a misapplication of the policy without being subject to bad-faith liability.[4]

---

[4] Riley additionally argues that Safeco failed to train Lehr on how to apply the cosmetic-damage exclusion; therefore, Safeco's conduct prevented it from "correctly concluding that Plaintiff's loss was covered." ECF No. 30, at 9. This argument essentially re-packages the assertion that Safeco could not rely on the Rimkus report's conclusion that the damage to Riley's roof was cosmetic because of the alleged misapplication of the cosmetic damage exclusion. *See id.* ("Although Safeco admits it is the adjuster's responsibility to apply its consultant's findings to the Policy, it was impossible for Safeco to do so correctly in this case because the adjuster had not been trained on how to apply the cosmetic damage exclusion in the policy, blindly relied on its consultant without understanding what definition the consultant applied and made no attempt to clarify the consultant's findings in order to correctly apply them to the policy."). As discussed, Safeco may misinterpret the insurance policy without being subject to bad-faith liability. And,

Riley further argues that Valle's failure to perform a metallurgical laboratory analysis on samples of the roof was unreasonable. However, this alleged failure does not demonstrate that Safeco knew or should have known that Valle's conclusions were unobjective or unreliable. *See Allstate Tex. Lloyds v. Mason*, 123 S.W.3d 690, 705–06 (Tex. App.—Fort Worth 2003, no pet.). In *Mason*, the insured and insurer each produced their own expert reports as to the cause and extent of the foundation damage at issue. The insured criticized the insurer's reliance on its expert's report. The insurer's expert testified it was "customary" to take soil tests in analyzing foundation damage that the insured claimed was covered, but the insurer's expert did not do so in this case. *Id.* at 705. However, the court still found that the insurer did not act in bad faith in relying on its expert's report because the expert had additionally testified that such steps "were not necessary" in the case, and he did not always request soil testing. Therefore, the facts did "not indicate that his conclusions were unreliable or that he did not arrive at them objectively" even considering the competing report. *Id.* at 706.

Similarly, in the present case, the insured's expert has opined that "it is reasonable and necessary to employ more specialized inspection and testing procedures to determine whether or not damage was in fact limited to [the roof's] 'physical appearance.'" ECF No. 21-14, at 4. Valle acknowledged during his deposition that metallurgical testing is sometimes needed to determine whether damage to a metal roof is cosmetic or non-cosmetic, specifically when there is a loss of coating on the surface of the roof. Valle Depo. 16:2–14. When Valle inspected Riley's roof, there was no evidence of loss of coating on the surface of the roof. ECF No. 21-5, at 7–9 (noting no cracks, chips, or punctures on the roof). As the *Mason* court recognized, a bona fide coverage dispute exists where experts disagree on the methods and conclusions of an investigation. *See*

---

as will be discussed *infra*, Safeco may rely on objective and reliable expert reports in determining whether claims are covered by its policies.

*Mason*, 123 S.W.3d at 704; *see also Cantu*, 399 S.W.3d at 569–70 (quoting *Moriel*, 879 S.W.2d at 18) ("A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith."). Here, the evidence shows that Safeco conducted an adequate investigation of the roof. While Valle did not submit a sample of the roof for metallurgical analysis, that fact alone is not sufficient to conclude that his conclusions were unreliable or that he did not arrive at them objectively. *See id.*

### B. Riley's extra-contractual claims based on denial of coverage fail as a matter of law because he has only pointed to evidence of a bona fide coverage dispute.

Riley contends that Safeco failed to pay his claim when its liability under the insurance policy was reasonably clear. To prevail on such a bad faith claim, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)). In other words, the insured bears the burden to prove that "there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham*, 103 F.3d at 459 (citing *State Farm Lloyds Inc. v. Polasek*, 847 S.W.3d 279, 284 (Tex. App.—San Antonio 1992, writ denied)). "[T]he issue of bad faith does not focus on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). Texas courts have repeatedly held that "evidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith." *Nicolau*, 951 S.W.2d at 448 (citing *Moriel*, 879 S.W.2d at 17).

Riley argues that no bona fide coverage dispute exists because Safeco's reliance on Valle's report was unreasonable, and thus no facts exist to justify Safeco's denial of his claim. However,

as discussed *supra*, Safeco conducted a reasonable investigation and there is no evidence that Valle's report was not objectively prepared or unreliable. Thus, Safeco was permitted to rely on its expert report in denying Riley's claim. The undisputed evidence in the record demonstrates that Safeco had a reasonable basis for denying Riley's claim—Valle's report. Riley merely points to evidence of a bona fide coverage dispute as to the application of the cosmetic damage exclusion and has not met his burden to establish there were no facts before Safeco that justify the denial of his claim. Therefore, Riley's extra-contractual claims fail as a matter of law.[5]

### C.  Riley's Chapter 542 Claims

Riley additionally brings two extra-contractual claims pursuant to Texas Insurance Code Chapter 542. First, Riley alleges Safeco violated the TPPA in handling his claim for damage to the metal roof. Because Safeco failed to brief this issue in its motion for summary judgment, Safeco has waived the issue and the Court will not grant summary judgment as to Riley's TPPA claim.

Second, Riley alleges that Safeco "forced Plaintiff to file this suit by offering substantially less than the amount of covered damages" in violation of section 542.003(b)(5) of the Texas Insurance Code. ECF No. 1-1, at 8.  A court may *sua sponte* dismiss claims for failure to state a claim. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). While ordinarily a court must give a plaintiff an opportunity to respond before dismissal, it need not do so if the plaintiff's response would be futile. *See Anokwuru v. City of Houston*, 990 F.3d 956, 967 (5th Cir. 2021) (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) ("At times, we will uphold a dismissal *sua sponte* without requiring notice, 'as long as the plaintiff has alleged his best case.'")). Here, Riley cannot state a claim for relief under section 542.003 because it does not authorize a private cause of action. *Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D.

---

[5] Because the Court concludes that Safeco is entitled to summary judgment as to Riley's Chapter 541 extra-contractual claims, it will not discuss the issue of Riley's claims for actual and treble damages for these claims.

Tex. 2013) ("The Unfair Settlement Practices Act refers to enforcement by the Texas Department of Insurance and the State Attorney General."); *Great Am. Assurance Co. v. Wills*, No. SA-10-CV-353-XR, 2012 WL 39620367, at \*2 (W.D. Tex. Sept. 10, 2012). Because no private cause of action exists under section 542.003 and Riley cannot amend his claim to state a claim for relief under the statute, the Court grants summary judgment on this claim.[6]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment as to Plaintiff's extra-contractual claims (ECF No. 21) is **GRANTED**. Plaintiff's Chapter 541 and section 542.003 claims are **DISMISSED WITH PREJUDICE**. Plaintiff's breach of contract and Texas Prompt Payment Act claims remain pending.

It is so **ORDERED**.

**SIGNED** this 22nd day of September, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[6] Riley also alleges a violation of Chapter 542A in his state court petition; however, this appears to be a typo. Therefore, the Court does not address this claim.

11